UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMY CATHERINE K.,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZII, Acting Commissioner of Social Security,<br><br>　　　　　　　　　Defendant. | Case No.:  20cv1463-KSC<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [Doc. No. 14] AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT [Doc. No. 18.]** |

On July 29, 2020, plaintiff Amy Catherine K. commenced an action pursuant to Title 42, United States Code, Section 405(g), against Andrew M. Saul, the Commissioner of Social Security, seeking review of a final adverse decision of the Commissioner. [Doc. No. 1.]  Currently before the Court are plaintiff's Motion for Summary Judgment seeking a reversal with an award of benefits or a remand for further proceedings [Doc. No. 14]; defendant's Opposition and Cross-Motion for Summary Judgment seeking an order affirming the Commissioner's denial of benefits [Doc. No. 18]; and plaintiff's Reply [Doc. No. 19].  For the reasons outlined more fully below, the Court finds that plaintiff's Motion for Summary Judgment [Doc. No. 14] must be DENIED, and defendant's Cross-Motion for Summary Judgment must be GRANTED.

/ / /

I. **_Procedural History._**

Plaintiff filed applications for disability insurance benefits and supplemental security income on March 27, 2018 and June 22, 2018 alleging she became unable to work as of September 15, 2017. [Doc. No. 11-7, at pp. 2-10; 11-20.] Plaintiff's application for benefits was denied on June 12, 2018, because it was determined that her condition was not severe enough to keep her from working. [Doc. No. 11-6, at p. 5.] Plaintiff then submitted a request for reconsideration on June 20, 2018, which was denied on September 12, 2018. [Doc. No. 11-6, at pp. 10-11.]

On September 24, 2018, plaintiff requested a hearing, and a hearing was then held before an ALJ on February 10, 2020. [Doc. No. 11-6, at p. 17; Doc. No. 11-4, at p. 112.] In a written decision dated February 26, 2020, the ALJ concluded plaintiff is not eligible for benefits, because she is not disabled. [Doc. No. 11-2, at pp. 54-64.] Plaintiff then requested review of the ALJ's decision by the Appeals Council, but the Appeals Council concluded in a letter dated June 10, 2020 that there was no basis for changing the ALJ's decision. [Doc. No. 11-2, at pp. 4, 43.] Therefore, the ALJ's denial became the final decision of the Commissioner.

Next, on July 29, 2020, plaintiff filed her Complaint in this action seeking review of the ALJ's decision. [Doc. No. 1.] Plaintiff then filed a Consent to jurisdiction for all purposes by the undersigned Magistrate Judge. [Doc. No. 8.]

II. **_Summary of the ALJ's Findings._**

The ALJ followed the Commissioner's five-step sequential evaluation process for determining whether an applicant is disabled under this standard. 20 C.F.R. § 404.1520(a). At steps one and two, the ALJ concluded that plaintiff has not engaged in substantial gainful activity since September 15, 2017, and she has the severe impairments of depression, anxiety, personality disorder, and post-traumatic stress disorder. [Doc. 11-2, at p. 56.] At step three, the ALJ concluded that plaintiff's impairments do not meet or equal any of the relevant listings in the SSA's Listing of Impairments. [Doc. No. 11-2, at p. 57.]

At step four, the ALJ must determine the claimant's residual functional capacity ("RFP") to work based on all impairments, including impairments that are not severe. 20 C.F.R. § 404.1520(e), § 404.1545(a)(2). RFP is "the most [an applicant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). As part of this assessment, the ALJ must determine whether the applicant retains the RFP to perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). Here, the ALJ concluded plaintiff is unable to perform her past relevant work as a receptionist but does have the RFP to perform a full range of work at all exertional levels with certain non-exertional limitations. [Doc. No. 11-2, at pp. 59-62.] The non-exertional limitations or restrictions cited by the ALJ are as follows: "she can understand, remember, and carry out simple, routine tasks in a routine, low stress work setting involving few workplace changes; she can never perform rapid pace assembly line work; she can tolerate no interaction with the public, but she can tolerate incidental superficial contact with the public; she can tolerate occasional interaction with supervisors; and she can tolerate occasional interaction with co-workers but not in a cooperative or team effort." [Doc. No. 11-2, at p. 59.]

Because the ALJ concluded plaintiff is unable to perform her past relevant work and is impeded from performing a full range of work by the non-exertional limitations or restrictions listed above, he made a finding at step five of the disability analysis. If the applicant cannot perform past relevant work, the ALJ at step five must consider the RFP assessment, along with the applicant's age, education, and work experience, to determine whether the applicant could "make an adjustment to other work" that is available in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(v); 42 U.S.C. § 1382c(a)(3)(B). While the applicant carries the burden of proving eligibility at steps one through four, the burden at step five rests on the agency. *Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003). "To determine the extent to which [the above-listed] limitations erode the occupational base of unskilled work at all exertional levels, the [ALJ] asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The

vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations," including housekeeping cleaner, photocopy machine operator, and laundry laborer. [Doc. No. 11-2, at p. 63.] Based on the record and the testimony of the vocational expert, the ALJ concluded plaintiff is not disabled, because she has the capability to make a successful adjustment to other work that exists in significant numbers in the national economy. [Doc. No. 11-2, at p. 63.]

### III. *Standards of Review – Final Decision of the Commissioner.*

The final decision of the Commissioner must be affirmed if it is supported by substantial evidence and if the Commissioner has applied the correct legal standards. *Batson v. Comm'r of the Social Security Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). Under the substantial evidence standard, the Commissioner's findings are upheld if supported by inferences reasonably drawn from the record. *Id.* If there is evidence in the record to support more than one rational interpretation, the District Court must defer to the Commissioner's decision. *Id.* "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Osenbrock v. Apfel,* 240 F.3d 1157, 1162 (9th Cir. 2001). "In determining whether the Commissioner's findings are supported by substantial evidence, we must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Smolen v. Chater,* 80 F.3d 1273, 1279 (9th Cir. 1996).

### IV. *Discussion.*

#### A. *The Parties' Motions*.

Plaintiff does not dispute the ALJ's summary of her medical records or the ALJ's findings at steps one through four of the five-step sequential evaluation. Rather, she contends that the ALJ's findings at step five are not supported by substantial evidence [Doc. No. 14, at p. 5.] To support this argument, plaintiff challenges the ALJ's reliance on the vocational expert's testimony that there are a significant number of jobs in the national economy in three representative occupations that could be performed by a person with plaintiff's RFC. [Doc. No. 14, at pp. 5-9.] More specifically, plaintiff argues there

are reliable government sources of information and data showing that the representative occupations of housekeeping cleaner, photocopy machine operator, and laundry laborer are not available in significant numbers for a person with her non-exertional limitations. [Doc. No. 14, at pp. 5-9.]

Defendant contends that the ALJ's step five determination is supported by substantial evidence, because plaintiff has not presented anything to establish that the supplemental vocational information referenced in her Motion is more reliable than and/or deserves greater weight than the testimony of the vocational expert. Even if plaintiff's supplemental information is accurate, defendant argues it only qualifies as "conflicting evidence in the record," and the ALJ's decision must be upheld "[w]here evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision." [Doc. No. 18, at p. 7, quoting *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).]

### B. *The Vocational Expert's Testimony.*

The ALJ relied on the following testimony of the vocational expert to reach his conclusion at step five:

> Q   . . . Please assume a hypothetical individual with the Claimant's same age, education, work experience, who has a residual functional capacity to work at all exertional levels, but with the following non-exertional limitations, can understand, remember, and carry out simple, routine tasks, in a routine, low-stress work setting, involving few workplace changes, can never perform rapid pace assembly line work, can tolerate no interaction with the public, but can tolerate incidental superficial contact with the public, can tolerate occasional interaction with supervisors, and occasional interaction with co-workers, but not in a cooperative, routine effort. Looks like past work is out.
>
> A   Right.
>
> Q   Would there be any other work such an individual could perform, and if so, three representative occupations.

> A   Yes. One example would be housekeeping, cleaner, DOT 323.687-014. That is light and unskilled, at SVP-2, approximately 250,000 of those jobs in the nation. A second example would be photocopy machine operator, DOT 207.685-014. That is light, unskilled, at SVP-2, approximately 20,000 of those jobs in the nation. And a third example would be laundry laborer, DOT 361.687-018. That is medium, unskilled, at SVP-2, approximately 50,000 of those jobs in the nation.

[Doc. No. 11-4, at pp. 117-118.]

The ALJ concluded in his decision that the vocational expert's testimony is consistent with the Dictionary of Occupational Titles. [Doc. No. 11-2, at p. 63.] Plaintiff does not challenge the ALJ's conclusion in this regard.

### C.   *Plaintiff's Supplemental Evidence.*

Although plaintiff did not object to the vocational expert's qualifications or testimony at the hearing [Doc. No. 11-4, at pp. 117-119], she argued in her May 18, 2020 appeal of the ALJ's decision to the Appeals Council that "the vocational expert's testimony is contradicted by reliable government data and thus cannot be substantial evidence to support the ALJ's non-disability finding." [Doc. No. 11-8, at p. 92-93.] "[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012).

Plaintiff refers the Court to information from two sources that she believes is enough to establish that the vocational expert's testimony as to all three representative occupations is unreliable and unbelievable: (1) the Occupational Outlook Handbook ("OOH"), which is published by the United States Department of Labor's Bureau of Labor Statistics [Doc. No. 14, at p. 8]; and (2) the O*NET On Line, which is a publicly available database that is apparently being developed to replace the DOT. [*See* Doc. No. 14, at p. 8 n.1, referencing https://www.dol.gov/agencies/oalj/topics/libraries/LIBDOT.]

The Court notes that Social Security regulations do reference both the DOT and the OOH as reliable sources of information.[1]

With respect to the first representative occupation of "housekeeping, cleaner," plaintiff refers to the OOH, which indicates the number of jobs available for this occupation in 2018 was 1,494,400. [Doc. No. 14, at p. 6, referring to Doc. No. 13-2, at p. 88.] As noted above, the vocational expert testified there are approximately 250,000 of these jobs in the national economy for a person with plaintiff's RFC. [Doc. No. 11-4, at pp. 117-118.] Plaintiff also refers the Court to the O*NET, which indicates that 96 percent of the jobs in this occupation require contact with others from half the time to constantly when, as noted above, the ALJ's RFP states that plaintiff can only tolerate occasional interaction with supervisors and co-workers. [Doc. No. 13-2, at p. 90 and Doc. No. 11-2, at p. 59.] Additionally, plaintiff points out that the O*NET indicates the importance of teamwork in 99 percent of the jobs in this occupation ranges from "fairly important" to "extremely important," and teamwork is "not important at all" in only one percent of the jobs in this occupation. [Doc. No. 13-2, at p. 92.] This information conflicts with the ALJ's RFC, which states that plaintiff can "tolerate occasional interaction with co-workers but not in a cooperative or team effort." [Doc. No. 11-2, at p. 59.] Therefore, plaintiff argues that the vocational expert's testimony is unreliable and unbelievable, because the OOH and the O*NET indicate the jobs in this representative

---

[1] "When we determine that unskilled, sedentary, light, and medium jobs exist in the national economy (in significant numbers either in the region where you live or in several regions of the country), we will take administrative notice of reliable job information available from various governmental and other publications. For example, we will take notice of—

(1) Dictionary of Occupational Titles, published by the Department of Labor;
* * * *
(5) Occupational Outlook Handbook, published by the Bureau of Labor Statistics."

20 C.F.R. § 404.1566

occupation are not available in significant number for someone with plaintiff's RFP. [Doc. No. 14, at p. 6.]

Turning to the second representative occupation of "photocopy machine operator," plaintiff refers once again to the OOH, which indicates the number of jobs available for this occupation in 2018 was 50,100. [Doc. No. 14, at pp. 6-7, referring to Doc. No. 13-2, at p. 60.] The ALJ testified there were approximately 20,000 jobs in this occupation that could be performed by an individual with plaintiff's RFC. [Doc. No. 11-4, at pp. 117-118.] Plaintiff also refers the Court to the O*NET, which indicates that 85 percent of the jobs in this occupation require contact with others in a range from half the time to constantly and that only 15 percent of jobs in this occupation require "occasional contact with others." [Doc. No. 13-2, at p. 62.] This conflicts with the ALJ's RFP, which states that plaintiff can only tolerate occasional interaction with supervisors and co-workers. [Doc. No. 11-2, at p. 59.] In addition, plaintiff points out that the O*NET indicates the importance of teamwork in 82 percent of the jobs in this occupation ranges from "fairly important" to "extremely important," and teamwork is "not important at all" in only 17 percent of the jobs in this occupation. [Doc. No. 13-2, at p. 92.] As a result, plaintiff contends many jobs in this occupation may not be available to her, because the ALJ concluded in his RFP that she can "tolerate occasional interaction with co-workers but not in a cooperative or team effort." [Doc. No. 11-2, at p. 59.] Therefore, plaintiff argues that the vocational expert's testimony is unreliable and unbelievable, because the OOH and the O*NET indicate the jobs in this representative occupation are not available in significant number for someone with plaintiff's RFP. [Doc. No. 14, at p. 7.]

Finally, with respect to the third representative occupation of "laundry laborer," plaintiff once again refers the Court to the OOH, which indicates the number of jobs available for this occupation in 2018 was 354,600. [Doc. No. 14, at p. 7, referring to Doc. No. 13-2, at p. 13.] As noted above, the vocational expert testified there are approximately 50,000 of these jobs in the national economy that could be performed by an individual with plaintiff's RFP. [Doc. No. 11-4, at pp. 117-118.] Plaintiff then refers

to the O*NET, which indicates that 83 percent of the jobs in this occupation require contact with others in a range from half the time to constantly when, as noted above, the ALJ's RFP states that plaintiff can only tolerate occasional interaction with supervisors and co-workers. According to the O*NET, only 17 percent of the jobs in this category require "occasional contact with others." [*Compare* Doc. No. 13-2, at p. 15 and Doc. No. 11-2, at p. 59.] In addition, plaintiff points out that the O*NET indicates the importance of teamwork in 92 percent of the jobs in this occupation ranges from "fairly important" to "extremely important," and teamwork is "not important at all" in only 8 percent of the jobs in this occupation. [Doc. No. 13-2, at p. 17.] This information also conflicts with the ALJ's RFC, which states that plaintiff can "tolerate occasional interaction with co-workers but not in a cooperative or team effort." [Doc. No. 11-2, at p. 59.] Plaintiff therefore contends that the vocational expert's testimony is unreliable and unbelievable, because the OOH and the O*NET indicate the jobs in this representative occupation are not available in significant number for someone with plaintiff's RFP. [Doc. No. 14, at p. 7.]

> D.   **Sufficiency of the Evidence to Support the ALJ's Step Five Findings.**

To determine "the number of relevant jobs in the national economy," the ALJ "may take administrative notice of any reliable job information, including information provided by a VE." [Citation omitted.] A VE's recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required." [2] *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). "[I]n the absence of any contrary evidence, a VE's testimony is one type of job information that is regarded as inherently reliable." *Buck v. Berryhill*, 869 F.3d 1040, 1051 (9th Cir. 2017). "Given

---

[2]   The Court notes that the Federal Rules of Evidence "do not apply to the admission of evidence in Social Security administrative proceedings. *See* 42 U.S.C. § 405(b)(1); 20 C.F.R. §§ 404.950(c), 416.1450(c) ('The administrative law judge may receive evidence at the hearing even though the evidence would not be admissible in court under the rules of evidence used by the court.')" *Bayliss*, 427 F.3d at 1218 n.4.

its inherent reliability, a qualified vocational expert's testimony as to the number of jobs existing in the national economy that a claimant can perform is ordinarily sufficient by itself to support an ALJ's step-five finding." *Ford v. Saul*, 950 F.3d 1141, 1160 (9th Cir. 2020). "[A] vocational expert's testimony may count as substantial evidence even when unaccompanied by supporting data." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1155, 203 L. Ed. 2d 504 (2019).

"[A]s numerous courts in this Circuit have concluded, a lay assessment of [raw] data from [sources such as the OOH and the O*NET] fails to undermine the reliability of [a] vocational expert's testimony" in the absence of expert opinion interpreting and assessing that data. *Kevin E. v. Saul*, No. 2:19-CV-09831-JC, 2021 WL 134584, at 6 (C.D. Cal. Jan. 14, 2021) (and cases cited therein). *See also Roderick L. A. G. v. Saul*, No. CV 20-5727-RAO, 2021 WL 2590159, at *7 (C.D. Cal. June 24, 2021) (stating that "[p]laintiff's lay interpretation of the vocational evidence does not trump the expertise of the [vocational expert]"); *Tommy D. J. v. Saul,* No. EDCV 20-1013-RAO, 2021 WL 780479, at *6 (C.D. Cal. Mar. 1, 2021) (same); *Marcelino P. v. Saul*, No. 2:20-CV-05341-GJS, 2021 WL 1215794, at *4 (C.D. Cal. Mar. 30, 2021) (concluding the Court could not "credit plaintiff's lay interpretation of raw statistical vocational data over the expertise of the [vocational expert]"). Without expert opinion interpreting and assessing the raw data, information obtained by a lay person from sources such as OOH and O*NET can only show that "evidence can be interpreted in different ways." *Id.* In other words, as defendant contends, the supplemental information presented by plaintiff is only conflicting evidence. Therefore, without more, there is no basis for a remand or reversal under the circumstance presented, because the ALJ's decision is supported by substantial evidence.

In reaching this conclusion, the Court rejects plaintiff's reliance on a recent reversal and remand in an unpublished Ninth Circuit decision entitled *Jacquez v. Saul*, 840 Fed. App'x 246 (9th Cir. 2021), because this case is factually distinguishable. In *Jacquez v. Saul*, the ALJ relied on the testimony of a vocational expert to conclude the

claimant could find substantial gainful employment as a counter clerk or usher. *Id.* at 247. On appeal, the Commissioner conceded the ALJ "erred about the counter clerk position," so only the representative usher job remained as potentially gainful employment. *Id.* The Ninth Circuit explained that a vocational expert testified there were 90,200 available usher positions in the national economy. However, "[t]he agency's Program Operations Manual System ["POMs"] in effect at the time of [the plaintiff's] hearing required a claimant to earn at least $1130 per month to engage in substantial gainful employment." *Id.* The POMs, together with the plaintiff's evidence, indicated 90 percent of usher jobs are part time, and this "suggest[ed]" there might not be a significant number of usher jobs in the national economy constituting substantial gainful employment, which would require at least 29.49 hours of work per week. Under these circumstances, which included an admitted error about job numbers at the administrative level, substantial evidence to support the ALJ's decision was doubtful at best, because a material ambiguity was obvious on the record without the need for a supporting interpretation and analysis of raw data by an expert. The Ninth Circuit therefore reversed and remanded the case for further fact finding "[g]iven the ambiguity about the availability of substantial gainful employment as an usher." *Id.* Therefore, in this Court's view, the Ninth Circuit's unpublished decision in *Jacquez v. Saul*, 840 Fed. App'x at 246, does not support a remand or reversal under the facts and circumstance of this case.

### *Conclusion*

Based on the foregoing, substantial evidence supports the ALJ's decision that plaintiff is not disabled, because she is able to perform a full range of work with certain exertional limitations and restrictions set forth in the ALJ's RFC assessment, and she is able to perform a significant number of jobs available in the national economy.

Therefore, IT IS HEREBY ORDERED that defendant's Cross-Motion for Summary Judgment is GRANTED [Doc. No. 18] and plaintiff's Motion for Summary Judgment seeking reversal or remand is DENIED [Doc. No. 14].

IT IS FURTHER ORDERED that the final decision of the Commissioner of Social Security is affirmed. The Clerk of the Court shall enter judgment accordingly and terminate the case.

IT IS SO ORDERED.

Dated: September 27, 2021

Hon. Karen S. Crawford
United States Magistrate Judge